322 So.2d 159 (1975)
STATE of Louisiana
v.
Wilbert MATTHEWS.
No. 56460.
Supreme Court of Louisiana.
November 3, 1975.
Rehearing Denied December 5, 1975.
*160 John D. Ponder, Ponder & Richardson, Roger W. Jordan, Metairie, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
TATE, J., dissents for the reasons assigned by Dixon, J., concurring.
DIXON, J., dissents and assigns reasons.
CALOGERO, J., dissents for the reasons assigned by Dixon, J., dissenting.
BOLIN, Justice.
Wilbert Matthews was charged by bill of information with armed robbery of a grocery store proprietor and was convicted after a jury trial. A sentence of fifty years' imprisonment at hard labor was imposed by the trial court. Defendant seeks reversal relying on ten bills of exceptions reserved to various rulings of the trial court. We affirm.
On February 22, 1971, two men entered the victim's business establishment. Each made a purchase and exited the store but remained on the sidewalk in the immediate vicinity for a few minutes. After a short time elapsed the two men reentered the store, aimed guns at the proprietor and his wife, and demanded money. The perpetrator identified as the defendant remained at the cash register with the proprietor's wife while the other armed individual accompanied the victim to the rear living quarters *161 of the structure to obtain more money. According to the testimony of the victim, the two men left the store and entered a taxi, in which they fled from the vicinity of the crime.
Approximately seven months later, a female who had patronized the victims' store on the day of the robbery approached the grocer and his wife, claiming that she had seen the two men who perpetrated the robbery and knew their identities. The woman gave the grocer the names and nicknames of the two men, which names the proprietor reported to the police. Photographs of the two men obtained from the police files, along with pictures of other individuals were subsequently viewed by the victim and his wife. The defendant and the individual jointly charged in the bill of information were identified from these photographs. Some weeks later, plans to conduct a line-up in which these two individuals were to appear were thwarted. Subsequently, a photograph of a line-up conducted about one month after the commission of this offense, in which both defendant and the person charged with him appeared and in which they were the suspects sought to be identified in connection with another offense, was shown to the victim and his wife. Again, both parties identified the defendant and the man with whom he was charged. Subsequent to these identifications this case came on for trial. Shortly before trial commenced the State elected to sever the jointly charged persons and proceeded against defendant, whose conviction followed after the trial on the merits.
BILL OF EXCEPTIONS NO. 1
This bill is leveled at the trial court's denial of a defense motion to suppress evidence. The only motion to suppress appearing in the record addresses itself exclusively to efforts to obtain suppression of pre-trial identification of defendant and exclusion of "all testimony or other evidence relating thereto." Defendant in brief avers defense counsel intended that this bill apply to the motion to suppress evidence filed in previous cases, which cases are not further identified in brief or at any point in the record. A review of the record reveals there was no motion seeking suppression of physical evidence in the instant case. The only issue before us, therefore, is the propriety of the trial court's action in denying defendant's motion to suppress the pre-trial identification of defendant.
The formal motion to suppress the identification urges that the failure of police to allow defendant to be represented by counsel at the pre-trial identification fatally taints that identification and mandates its suppression. Cited in support of this contention are Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) and United States v. Wade, 388 U. S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). The decisions in Gilbert and Wade are inapposite. Those cases involve pre-trial line-up identification and are not concerned with photographic identification. United States v. Ash, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973) leads us to conclude defendant's instant claim lacks merit. In Ash the Court concluded a criminal defendant does not have a constitutional right to have counsel present at photographic displays conducted by the government for the purpose of attempting to secure an identification of the perpetrator of a crime. The pre-trial identification sought to be suppressed in the present case was a photographic identification and, therefore, comes within the purview of the Ash holding. A review of the hearing on the motion to suppress the identification fails to reveal suggestiveness or other impermissible procedure in connection with the photographic identification. Indeed, no such illegal procedure is suggested.
This bill of exceptions lacks merit.
BILL OF EXCEPTIONS NO. 2
During the trial on the merits, the victim, in response to questions of defense *162 counsel, sought to explain an inconsistency between his trial testimony and testimony given a day earlier at the hearing on the motion to suppress the pre-trial identification. During the pre-trial hearing, the victim had testified that he had been unable to identify either of the men who robbed him from photographs he had viewed. At trial, the victim claimed he had identified both the defendant and the other robber. On cross-examination, defense counsel sought to probe this inconsistency, and asked whether the witness had in fact stated on the earlier occasion that he had been unable to identify anyone from the photographs exhibited to him. In the course of explaining the inconsistency the witness stated he was confused with another incident and mentioned his inability to identify anyone from photographs occurred at a time when he visited the district attorney's office. He then stated, again with reference to the occasion upon which he visited the district attorney's office, "* * * I also had to take a lie detector test. * * *" Defendant objected to the witness' reference to a lie detector test, whereupon the trial court reacted favorably to defendant's objection by admonishing the jury to disregard any remarks concerning a lie detector test. Remarking he felt the admonition inadequate to protect the rights of his client, defense counsel requested a mistrial, which the trial court refused to grant.
In brief defendant argues there was some doubt a robbery occurred at all and that the reference to a lie detector test could only lead the jury to infer the victim successfully demonstrated to the lie detector examiner that a robbery had occurred. This statement, defendant contends, severely prejudiced him.
The Court has reviewed the record and is unable to find any indication there was doubt a robbery had taken place or that the witness' reference to a lie detector test invariably creates an inference that the victim successfully established to the satisfaction of the authorities a robbery had occurred. The fact that the reference does not compel such an inference is clearly demonstrated by the colloquy within which the reference occurred.[*]
As noted by the trial court in its per curiam to this bill of exceptions, the denial of the mistrial is proper under La.C.Cr.P. art. 770, which sets forth the grounds which render the declaration of a mistrial mandatory. Moreover, the procedure for admonition set forth in La.C.Cr.P. art. 771 was properly followed in this instance. After a review of the record and consideration *163 of defendant's arguments in connection with this bill of exceptions, we are not convinced that any prejudice flowed from the witness' gratuitous remark.
BILLS OF EXCEPTIONS NOS. 3, 4, and 5
During the testimony of a police officer the State sought to elicit testimony concerning the officer's attempt to conduct a line-up to determine whether the robbery victim and his wife could identify the defendant and his co-indictee as the perpetrators of the crime. During preliminary questioning the State asked the witness if he had succeeded in his attempt to conduct a line-up, to which question defendant objected on grounds that the inquiry was irrelevant, immaterial and would generate prejudice against the defendant. The objection was overruled and a bill reserved. Thereafter, in response to questions by the State the witness testified he was unsuccessful in his attempt to conduct a line-up which included the defendant and the person charged with him. The attempt was unsuccessful in part because the two men strenuously resisted being removed from the tier to participate in a line-up, "hollering and screaming" their objections. At this point defense counsel again objected, arguing that the testimony was immaterial, irrelevant and highly prejudicial. The trial court's action in overruling the defendant's objection led to the reservation of Bill No. 4. Later in the trial, during the same officer's testimony, defendant reserved Bill No. 5 when the trial court permitted the State to elicit testimony regarding the general procedure for conducting line-ups. The officer who testified he conducted "the majority of line-ups" had not conducted the line-up represented by the photograph which was at that time the subject of trial inquiry.
In essence, defense counsel does no more than reiterate his trial objections of immateriality, irrelevance and resultant prejudice in his appellate brief. In its per curiam to these bills of exceptions the trial court addressed itself to the court's wide discretion in determining the relevancy and materiality of evidence. The judge noted those particular objections are traditionally considered the weakest objection to the admission of evidence, and stated this evidence was considered relevant to show the jury why and under what circumstances there was a failure to conduct a police line-up. A review of pertinent testimony in connection with these bills of exceptions shows that a photograph of a much earlier line-up, in which both defendant and the co-accused appeared, was used to secure the victims' identification in lieu of a physical line-up, because of the circumstances. The photograph of the line-up was introduced into evidence with a caption thereon showing March, 1971 as the date of the line-up. In the instant case defendant did not become a suspect until September, 1971. It appears that the officer's testimony regarding his inability to conduct the lineup and his testimony that this inability led to instructions from a criminal district court judge to use this photograph of an earlier line-up for identification purposes was relevant and material. It tended at least to explain why a picture dated some six months before the authorities suspected the defendant of this crime was used as a means of securing identification of the perpetrators. The trial court did not err in overruling defense counsel's objections which formed the bases of Bills Nos. 3 and 4.
Our review of the record substantiates the defendant's contention in Bill of Exceptions No. 5 that the officer testifying about line-up procedures did not conduct the line-up reflected in the photograph. In spite of this, we find no error in the trial court's ruling which allowed the officer to testify regarding general line-up procedures, in the absence of a defense claim that the general procedures explained to the jury were not actually used in connection with the photographed line-up. In brief defendant once again argues the officer's testimony was irrelevant. In view of *164 defendant's failure to show any prejudicial effect in connection with the officer's testimony acquainting the jury with the routine aspects of line-up procedure, we find no reversible error in the trial court's ruling.
BILL OF EXCEPTIONS NO. 6
This bill was reserved when the trial court sustained the State's objection to the defense counsel's attempt to exhibit to a police officer witness the search warrant he had purportedly executed at the apartment of the defendant, for the stated purpose of determining whether that warrant was the same warrant the officer had executed.
The record indicates that defense counsel's desire to exhibit the warrant to the officer was in no way connected with an attack on the sufficiency of the warrant or the propriety of the search and seizure purportedly conducted pursuant to its authority. Notwithstanding the trial court's urging that counsel state the basis of his attempt to show the warrant to the officer, counsel was unable to establish what he hoped to prove by showing the search warrant was the same. In its per curiam to this bill of exceptions, the trial court maintains that under the circumstances the line of questioning was irrelevant, immaterial and not a matter for the jury's concern. We find no reversible error in this ruling, in view of the fact there was no dispute over the legal sufficiency of the warrant, the search or the seizure.
BILL OF EXCEPTIONS NO. 7
During redirect examination of one of the State's witnesses, defendant objected to a line of inquiry which he claimed should have been explored on direct examination. The court commented that the State could take the witness off the stand and then recall him in order to introduce the desired evidence. When defense counsel commented he believed that would have to be done, the court proceeded to excuse the witness and instructed the State to recall him. The witness was recalled and the defendant objected to this action, arguing that the State should not have the right to recall the witness.
In brief defendant concedes the trial court has wide discretion in recalling witnesses who have previously testified. Additionally, this Court has refused to recognize as error a trial court's action in allowing the scope of redirect examination to exceed the scope of cross-examination, in light of the defendant's statutory right to recross on new matters brought out on redirect examination. La.R.S. 15:281, State v. Jefferson, 284 So.2d 882 (La.1973).
There is no error presented by this bill of exceptions.
BILL OF EXCEPTIONS NO. 8
During trial, the defense objected to the introduction into evidence of numerous items of tangible evidence, stating the various items had not been connected with defendant. Defense counsel likewise objected to the State's amendment of its verbal description of exhibit S-3, a .22 caliber gun, to include the six live .22 caliber rounds contained therein. This bill of exceptions was reserved to the trial court's overruling of the defendant's objection. On appeal, defendant urges only the impropriety of the admission into evidence of a.38 caliber pistol, arguing it had not been identified as being used either in the robbery for which he was being prosecuted or the robbery referred to at trial to prove system and intent.
At the time defendant entered his objection to the introduction of the tangible evidence he specifically excepted from his objection the .38 caliber pistol, stating, "* * * we would like to object to the introduction of the evidence * * * with the exception of the one .38 caliber pistol, which the statement made did identify as belonging to him." In light of this *165 action on the part of defendant, this bill lacks merit.
BILL OF EXCEPTIONS NO. 9
After the State had rested, defendant called as his first witness the woman whose communication of the identity of defendant and his co-indictee to the victims of the robbery led to defendant's arrest on the charge and the instant prosecution. While questioning the witness the defendant asked whether her husband had written her any letters from Parish Prison, apparently prior to the time that she had identified defendant and his confederate to the robbery victims. The State objected to the defendant's question regarding letters to the witness from her husband in Parish Prison, stating that fact would be immaterial. After removal of the jury, defense counsel stated to the court that he was attempting to show bias on the part of the witness by the attempted line of inquiry. The court rejoined that defendant would have to have evidence to prove bias. Defense counsel replied he felt he could supply that necessary evidence later. The State entered a further objection, arguing that La.R.S. 15:487 prohibits a party from impeaching his own witness unless he has been taken by surprise or unless the witness is hostile, and even then the impeachment must be limited to evidence of prior contradictory statements. After hearing the State's argument the court ruled it would not permit defendant to pursue his line of inquiry, and this bill of exceptions was reserved.
Our review of the record reveals that at the time defendant called the witness to the stand, counsel requested that he be allowed to treat her as a hostile witness and cited as a basis for his request the prior evidence which established she had identified him to the victim. The court indicated that it would require testimony to establish her as an adverse witness and had not yet heard any such testimony. Defense counsel rejoined that he felt sufficient testimony had been given, but stated that if the court did not agree, he could elicit testimony from the witness.
Defendant argues in brief that La.R.S. 15:492 establishes that the legislature wished to grant to litigants the right to establish the bias of witnesses and argues that he had the right to establish her bias, although he called her as a witness, because it was clearly shown that she was a hostile witness, and, hence, subject to impeachment under La.R.S. 15:487.
Assuming that the showing made by defendant could have warranted declaration of this witness as a hostile witness within the meaning of La.R.S. 15:487, and further assuming that the trial court's action in foreclosing defendant's inquiry regarding the alleged letter she received from her incarcerated husband curtailed his right to avail himself of the provisions of La.R.S. 15:492 and exhibit the witness' bias, such error does not warrant reversal of the defendant's conviction and sentence. The study of the entire record reveals the witness' true involvement in this case. For example, the inordinate lapse of time between her knowledge of the identity of the perpetrators and her revelation to the victims was established to the extent that her bias was evident to the jury. Considering all of the circumstances of the case, and in view of the fact that the error, if any, does not in our opinion amount to a substantial violation of a constitutional or statutory right and is not prejudicial to defendant's substantial rights, we find the bill lacks merit. La.C.Cr.P. art. 921.
BILL OF EXCEPTIONS NO. 10
Defendant reserved this bill of exceptions when the trial court sustained the State's objection to defendant's attempt to inquire whether the witness whose testimony was the subject of Bill No. 9 was under the influence of any narcotics at the time of the giving of her testimony. The trial court sustained the State's objection, which was based on the premise that the question *166 was yet another attempt by the defendant to impeach his own witness. In accordance with our disposition of the issue presented by Bill of Exceptions No. 9, we do not find that disallowance of this question and the information it sought, if error, is of such magnitude as to require a reversal of the defendant's conviction.
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
DIXON, J., dissents and assigns reasons.
TATE and CALOGERO, JJ., dissent for the reasons assigned by DIXON, J.
DIXON, Justice (dissenting).
I respectfully dissent from the treatment of Bill No. 9. There has obviously been a substantial violation of the defendant's constitutional rights to confront witnesses against him. Defendant's brief, not in the least way contradicted by the State, discloses that the trial judge and prosecutor prevented defendant from revealing to the jury that the witness who revealed the identity of the robbers to the victim did so because her husband, in jail, had made a deal with the police.
Defendant's brief is quoted as follows:
"The facts concerning Carolyn Parker are as follows:
"1. Carolyn Parker was in the store just prior to the robbery. She returned after the robbery and asked for change from the Guillorys who told her they had no change. She did not tell the Guillorys who robbed them.
"2. Carolyn Parker was arrested and remained in jail for a considerable time. Her husband, Clarence Parker, was also in jail. Both were being held for the same crimes as that of defendant is being charged with.
"3. After getting out of jail, she told the Guillorys that defendant and Isiah Smith were the ones who robbed them.
"4. Counsel for defense knew nothing of these facts until during the actual trial of this matter. Carolyn Parker was subpoenaed as a State's witness.
"5. The State in its opening statement had stated that the State will introduce evidence from two other witnesses (besides the Guillorys) to this robbery.
"The witness was a hostile witness as far as the defense was concerned. She was held by her own testimony for three months in jail as an accessory before and after the fact in this very case (T-137). For some unknown reason she was released after 3 months. There is no doubt that bad blood existed between Clarence Parker, her husband, and Isiah Smith (the other defendant that the State had severed from this trial). Carolyn Parker admitted even though questioned by the police, she said nothing. It should be noticed on page 145 the following testimony:
"EXAMINATION BY MR. ROGER JORDAN:
"Carolyn Parker Transcript Page 145, Line 1 thru 17
`Q. Why did you tell them, and not the police?
`A. Well, I wrote a letter to the police and told them about it too.
`Q. When did you do that?
`A. A little after I got out.
`Q. Why didn't you tell them in the three months that you were in jail?
`A. Because I didn't get
"`BY MR. WIMBERLY:
`Your Honor, I have to object again.
"`BY THE COURT:
`Objection sustained.
*167 "`BY THE WITNESS:
`Because I didn't get a "`BY THE COURT:
`Don't answer the question. Let's get on to something else, Mr. Jordan.'
"The Court nor the district attorney quite obviously was going to let the witness finish her answer and it is quite obvious that a deal was made with her by the State.
"Again, when questioned about the letters her husband had written her from Parish Prison:
"EXAMINATION BY MR. ROGER JORDAN:
"Carolyn Parker Transcript Page 150, Line 27 continued Page 151, Line 1 thru 27 and Page 152, Line 1 thru 25
"`Q. Did he write you any letters from Parish Prison?
`BY MR. WIMBERLY:
`Objection, it's immaterial whether her husband wrote her any letters from Parish Prison.
`BY THE COURT:
`What's the purpose of the question?
`BY MR. JORDAN:
`Your Honor, perhaps we ought to have the jury excused for this argument.
`BY THE COURT:
`Very well.
`(The jury exits the courtroom)
`BY MR. JORDAN:
`Your Honor, I'm trying to establish by this testimony that this witness received a letter from her husband, in which he stated that he was attempting to make a deal with the District Attorney's office to get off of his charge by testifying against these two people, and I believe that this woman has identified these two people after three months in jail, when she had ample opportunity to identify them. She identified them after she got out for the simple reason that she'd received communication from her husband that this is what she ought to dothat she is attempting to get her husband off. Furthermore, I think
`BY THE COURT:
`You have to have some evidence to prove that, sir.
`BY MR. JORDAN:
`I think I can connect it up later.
`BY MR. WIMBERLY:
`May I be heard?
`BY THE COURT:
`Alright, Mr. Wimberly, I'll hear you.
`BY MR. WIMBERLY:
`Article 487 of the Revised Statute, Title 15 reads:
`No one can impeach his own witness unless he has been taken by surprise by the testimony of such witness, or unless the witness show hostility toward him, and even then the impeachment must be limited to evidence of prior contradictory statements.'
`It's impermissible to do what he is trying to do. Her husband wasn't called as a witness in this trial anyway.
`BY THE COURT:
`That's it. I'm not going to permit you to go any further, Mr. Jordan.
`Call back the jury.
`BY MR. JORDAN:
`I object, Your Honor, and reserve a bill.
`BY THE COURT:
`Let the bill be reserved.'
"Defense counsel certainly had a right to ask this witness this question especially *168 since the State had been given every opportunity throughout the trial to connect their questions to case. It should be remembered that Clarence Parker was supposedly across the street at the time of the robbery (T150, Line 24). The question referred to is `Did (Clarence Parker) he write you any letter from Parish Prison.' The next obvious question that defense counsel was going to ask was what were the contents of these letters.
"The law allows leading questions to unwilling witnesses. R.S. 15:277 reads as follows, to-wit:
`A leading question is one which suggests to the witness the answer he is to deliver, and though framed in the alternative, is inadmissible when propounded to one's own witness, unless such witness be unwilling or hostile.'
"It was brought out in the testimony that Carolyn Parker had told the police she knew nothing of the robbery. Certainly the fact that she also testified now she knew who committed the crime. State v. Fulmer, 1972, 263 La. 971, 270 So.2d 116. In the case of State v. Finley, Sup.1973, 275 So.2d 762, the prosecuting attorney was allowed to propound leading questions to identification to witness who was reluctant to testify and cast doubt on her own identification although he could not impeach witness, since he was not surprised at her reluctance. The instant case is somewhat different in that the defense did not know of the existence of this witness until the testimony of the Guillorys and was surprised at her very existence. Defense attorney had no opportunity to talk to the witness during the trial and find out about the existence of the letters from Sally Baptiste, a witness subpoenaed by the defense attorneys for Isiah Smith during the trial.
R.S. 15:492 reads as follows, to-wit:
`When the purpose is to show that in the special case on trial the witness is biased, has an interest, or has been corrupted, it is competent to question him as to any particular fact showing or tending to show such bias, interest or corruption, and unless he distinctly admit such fact, any other witness may be examined to establish the same.'
"It is obvious that legislature in its wisdom wished to allow attorneys the right to establish the bias of witnesses and bring out their motives for testifying.
"R.S. 15:587 [15:487] reads as follows, to-wit:
'No one can impeach his own witness, unless he has been taken by surprise by the testimony of such witness, or unless the witness show hostility toward him, and, even then, the impeachment must be limited to evidence of prior contradictory statements.'
"One of the critical questions raised by the clause `taken by surprise by the testimony of such witness' is the time element. Does this mean that if defense counsel learns five minutes before calling a witness that she is going to change her testimony, prevents the attorney from being surprised by the testimony? The defense in this case was surprised by the testimony of James Guillory from the day before in regard to the identification of the photographs. Also it should be pointed out that James Guillory was very careful not to mention the name of Carolyn Parker the day before.
"That the witness was hostile is quite evident for the reason previously given (1) she probably made a deal with the State for herself and maybe her husband, (2) her husband and Isiah Smith had `bad blood' between them, (3) she had been in jail for three months in regard to the crime and she stated she had nothing to do with it.
"The State's argument is that the hostility that the witness had toward Isiah Smith could not be imputed to Wilbert Matthews. This I feel is the reason the State severed *169 the trial in an attempt to prevent the defense for Wilbert Matthews impeaching Carolyn Parker. However, I would like to point out that two people committed the robbery and in order for Carolyn Parker to make her story stick against Isiah Smith she was more or less forced to identify the other supposed robber and since Wilbert Matthews was a friend of Isiah Smith and Carolyn Parker knew this, so it was natural that she say that the other person was Wilbert Matthews. This certainly would not be the first time a bystander was pulled into the vindictiveness between people."
The jury was entitled to know, and the defendant was entitled to show the bias of the witness which might have affected her identification of the defendant.
NOTES
[*] "BY [DEFENSE COUNSEL]:

Q Mr. Guillory, you remember being in Court yesterday?
A Right, sir.
Q You took the stand?
A Right.
Q Did you take an oath yesterday?
A Right.
Q I remember you were asked a question about did you identify from these photographs, mug shots as you called them, that the police brought out, these people's pictures, and you said, no, that you didn't identify anybody, is that right?
A That's right, but I was confused with another incident. You see, I came to the D.A.'s Office, and I looked at photos. That is when I couldn't identify none of these people, these two characters here. I also had to take a lie detector test. That's what I thought they were referring to. That's the photos that I couldn't come up with.
"BY [DEFENSE COUNSEL]:
I object to the use of a lie detector test in reference to the witness's identification. I believe
"BY THE COURT:
Yes, that is not admissible in evidence, so I'm instructing the jury to disregard any remarks concerning a lie detector test.
"BY [DEFENSE COUNSEL]:
May it please the Court, I'm not certain that the instruction of the Court, although certainly accurate, would be adequate to protect the rights of the defendant, and I do at this time ask for a mistrial on the basis that the witness did try and bolster the veracity of his testimony by his reference to a lie detector test.
"BY THE COURT:
No, I mean, you're saying that now. I didn't get that impression. I don't think anybody else did for that matter."